**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AHMED ZAKY, On behalf of himself and
Those similarly situated,

        Plaintiff,

        vs.

ALPHACARE OF NEW YORK, INC. and
MAGELLAN HEALTHCARE, INC.,

        Defendants.

---

Case No. 15 CV 5500 (FB) (RLM)

 

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY COLLECTIVE ACTION CERTIFICATION

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ..................................................................................................................... 6

I.  Legal Standard for Conditional Certification Under the FLSA ........................................ 6

II.  THE ISSUE OF PLAINTIFF'S "EXEMPT" STATUS SHOULD BE
LITIGATED FIRST ...................................................................................................... 7

           (i)   Mr. Zaky "Made Sales" .......................................................................... 8
           (ii)   Mr. Zaky Worked Remotely .................................................................. 9

III.  PLAINTIFF HAS NOT MADE A FACTUAL SHOWING THAT HE IS
"SIMILARLY SITUATED" WITH OTHERS IN THE PROPOSED CLASS .............. 10

    (a)   The Mere Classification of Medicare Sales Reps as Exempt Does Not
Show Mr. Zaky and Potential Class Members are Similarly Situated ................ 11
    (b)   Mr. Zaky's Other Allegations Are Based Only On His Experience And
Improperly Include Employees Performing Different Tasks .............................. 13

IV.  If the Court Does Grant Conditional Certification, The Discovery and Notice
Proposed by Plaintiff is Improper ................................................................................. 14

    (a)   Plaintiff Is Not Entitled to Discovery of Social Security Numbers .................... 14
    (b)   The Notice is Improper ..................................................................................... 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
103 F. Supp. 3d 343, 346 (E.D.N.Y. 2015) ...............................................................6, 10, 11

*Chenensky v. New York Life Ins. Co.*,
No. 07 CIV. 11504 (WHP), 2009 WL 4975237 (S.D.N.Y. Dec. 22, 2009) .......................8, 14

*Eng-Hatcher v. Sprint Nextel Corp.*,
No. 07 Civ 7350 (BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ...............................6, 7

*Fischer v. Tynan*,
No. 90 Civ. 7587 (LBS), 1993 U.S. Dist. LEXIS 8224 (S.D.N.Y. June 16,
1993) ...................................................................................................................................7

*Gorey v. Manheim Servs. Corp.*,
No. 7:10-CV-1132, 2010 WL 5866258 (S.D.N.Y. Nov. 10, 2010)........................................16

*Gregory v. First Title of America, Inc.*,
555 F.3d 1300 (11th Cir. 2009) ...........................................................................................9

*Guillen v. Marshalls of MA, Inc.*,
No. 09 Civ. 9575 (LAP) (GWG), 2012 WL 2588771 (S.D.N.Y. July 2, 2013) .....................13

*Han v. Sterling Nat. Mortgage Co.*,
No. 09-CV-5589 JFB AKT, 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011)....................14, 15

*Jenkins v. The TJX Companies Inc.*,
853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................6, 11, 12, 13

*Johnson v. Carlo Lizza & Sons Paving, Inc.*,
No. 15 CIV. 7423 (PAE), 2016 WL 524640 (S.D.N.Y. Feb. 5, 2016)...................................16

*Khan v. Airport Management Servs.*,
No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ........................11, 12

*Patton v. Thomson*,
364 F. Supp. 2d 263 (E.D.N.Y. 2005) ..........................................................................12, 14

*Robertson v. LTS Mgmt. Servs. LLC*,
642 F. Supp. 2d 922 (W.D. Mo. 2008) ................................................................................15

*Rosario v. Valentine Ave. Disc. Store, Co.*,
828 F. Supp. 2d 508 (E.D.N.Y. 2011) .................................................................................15

*Salomon v. Adderley Indus., Inc.*,
   847 F. Supp. 2d 561 (S.D.N.Y. 2012) ................................................................................16

*Tracy v. NVR, Inc.*,
   293 F.R.D. 395 (W.D.N.Y. 2013), *aff'd sub nom., Gavin v. NVR, Inc.,* 604 F.
   App'x 87 (2d Cir. 2015)........................................................................................................9

*Valerio v. RNC Indus., LLC*,
   314 F.R.D. 61 (E.D.N.Y. 2016) .........................................................................................15

*Vansike v. Peters*,
   974 F.2d 806 (7th Cir. 1992) ...............................................................................................7

*Vasquez v. Vitamin Shoppe Industries.*,
   No. 10 Civ. 8820 (LTS) (THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011)....10, 11, 12, 13

*Vogel v. American Kiosk Mgmt.*,
   371 F. Supp. 2d 122 (S.D.N.Y. 2005) ..................................................................................7

**Statutes**

29 U.S.C. § 213(a)(1) .................................................................................................................8

FLSA ................................................................................................................... *passim*

29 C.F.R. § 541.500 .............................................................................................................8, 14

29 C.F.R. § 541.502 ...................................................................................................................9

Fed. R. Civ. P. 23 ......................................................................................................................6

Defendant Magellan Healthcare, Inc. ("Defendant Magellan") and Defendant AlphaCare of New York, Inc. ("Defendant AlphaCare", and together with Magellan, "Defendants"), by and through their attorneys, Kelley Drye & Warren LLP, respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Collective Action Certification ("Plaintiff's Motion").

## PRELIMINARY STATEMENT

Mr. Zaky was a Medicare Captive Sales Representative ("Medicare Sales Rep") employed as an outside salesperson by AlphaCare for approximately 8 months in 2014.  His employment was terminated, after he sent a sexually explicit photograph to a female coworker. Mr. Zaky was one of **only 28** such Medicare Sales Reps, who traveled throughout the City selling AlphaCare's health plans to members of the New York City community. Mr. Zaky worked with the only one small sub-team of approximately 5 Medicare Sales Reps at all times, via a recreational vehicle ("RV"), which traveled to different locations in the City to reach community members.  Mr. Zaky also left the RV to interact with the potential enrollees and sell AlphaCare's products.  Mr. Zaky received a base salary and commissions.  He was classified as an exempt employee, under the "outside sales" exemption.

Mr. Zaky's motion for conditional certification of a FLSA class action should be denied for several reasons:

**First**, Mr. Zaky has failed to demonstrate he is "similarly situated" to the other Medicare Sales Reps or that there is even an appropriate class.

**Second**, before any class is conditionally certified, the Court should permit discovery and briefing, and determine the issue of whether the position is exempt – which Defendants believe it is.  Determination of this threshold exemption issue first will be the most

1

efficient way to litigate this case.  If Mr. Zaky is exempt, there can be no class action, and the FLSA claim can be dismissed on summary judgment.

**Third**, Mr. Zaky also lacks even basic knowledge about the alleged "class" and makes conclusory allegations to support this Motion – which are **<u>wrong</u>**.  For example, Mr. Zaky alleges that he "believes" there are "200-400" Medicare Sales Reps (in reality, **<u>there are only 28</u>**).

Moreover, Mr. Zaky does not know what most of the other employees even did on a daily basis.  The Medicare Sales Reps were divided into four sub-teams of approximately five representatives each, and Mr. Zaky worked on just one sub-team out of four in the New York City area.  He provides no facts or details about what any other employee on the other sub-teams did – because he has no such facts.

In addition, Mr. Zaky includes in his purported class a category of approximately 5 employees with a different job title.  These employees sold a different product – Managed Long Term Care insurance – and did not work out of an RV.

Finally, should the Court grant conditional certification, Defendants object to both the discovery sought by Plaintiff and Plaintiff's proposed form of notice.  Discovery should not include social security numbers, and the form of notice, among other things, improperly refers to the fee arrangement between Plaintiff and his counsel and does not advise the purported class members that they may be deposed and asked to provide documents or other information.

## <u>FACTUAL BACKGROUND</u>

Mr. Zaky was employed as a Medicare Sales Rep with AlphaCare from April 14, 2014 to November 14, 2014.  (Germoso Decl. ¶ 7).[1]  He was never employed by Magellan.

---

[1] "Germoso Decl." refers to the Declaration of Tobias Germoso, dated August 4, 2016 and filed herewith.

(Magellan Answer ¶¶ 32, 33).  He was ultimately terminated from AlphaCare after he sent a nude photo of himself to a female coworker.  *See* MacGregor Decl. Ex. A (determination of New York Unemployment Insurance Appeal Board); AlphaCare Answer ¶ 57.[2]  While Mr. Zaky brings other claims for violations of the False Claims Act, retaliation, and hostile work environment, the factual background herein focuses on his FLSA allegations, as they pertain to the instant motion.

During 2013-2015, AlphaCare sold its Medicare health insurance plans to potential enrollees through sales Medicare Sales Reps who worked remotely throughout the City, using RVs to travel and see potential customers.  (Germoso Decl. ¶¶ 6, 8).  During this time, there were a total of 28 Medicare Sales Reps.  (*Id*. ¶ 6).  Since 2014, there have been two reductions in force, followed by a complete elimination of all Medicare sales related positions at AlphaCare effective December 31, 2015.  (*Id*.).

During the period of Mr. Zaky's employment, AlphaCare Medicare Sales Reps did not work out of any one location.  They worked out of RVs that were dispatched to various locations around New York City (New York, Queens, Brooklyn, and the Bronx).  (Germoso Decl. ¶ 8).  These locations were remote from AlphaCare's headquarters, which is located at 335 Adams Street in Brooklyn, New York.  (*Id*. ¶ 4).

There were four sub-teams of approximately 5 Medicare Sales Reps.  (Germoso Decl., ¶¶ 8, 13).  Mr. Zaky worked with the same sub-team during his employment.  (*Id*. ¶ 8).  Mr. Germoso, the Director of Medicare Sales and Mr. Zaky's supervisor, generally split his time between the four sub-teams, and he observed Mr. Zaky working.  (*Id*. ¶ 13).

---

[2] "MacGregor Decl." refers to the Declaration of Alison L. MacGregor, dated August 5, 2016 and submitted herewith.

Typically, the RV would arrive at the location at around 8 a.m. and the RV would leave at 4:00 p.m.  (Germoso Decl. ¶ 9).  The Vice President of Sales, Carlos Castellanos, specifically ordered that the RVs leave by 4:00 p.m.  (*Id*. ¶ 10).  Accordingly, the Medicare Sales Reps worked a 35 hour work week.  (*Id*.).  During their workweek, Medicare Sales Reps left the RVs to visit potential enrollees in their homes or other locations.  (*Id*. ¶ 11).

As a Medicare Sales Rep who engaged in "outside sales", Mr. Zaky was classified as "exempt".  (Germoso Decl. Ex. A (employment agreement); AlphaCare Answer, at Third Affirmative Defense).  Because he was engaged in the sale of insurance products, AlphaCare required Mr. Zaky to have an Accident and Health Sales Insurance license in New York.  (*Id*.). While Mr. Zaky now claims that he was simply "promoting" the Medicare health plans sold by AlphaCare, that is not a correct statement of his duties.  *See* Zaky Decl. ¶ 5.  By definition his professional role was to promote AlphaCare's Medicare Advantage plans to Medicare beneficiaries ultimately steering them to enroll. (Germoso Decl. ¶ 19).  Mr. Zaky's job responsibilities were set forth as follows, in a job description that he signed:

> The Medicare Captive Sales Representative is responsible for growing Medicare Advantage enrollment volume by targeting Medicare beneficiaries or that have dual eligible status (Medicare and Medicaid) while adhering to all mandates set forth in the CMS marketing and compliance guidelines as well as in the Alphacare policies and procedures. The sales representative will conduct one-on-one sales meetings and house calls as well as work in the field with key providers, local government agencies, community leaders, community based organizations, and others serving the dually-eligible population. Key responsibilities will include attending community events and community based marketing fairs or events to promote product education and awareness for the Medicare the dual eligible population.  This individual will become a familiar and trusted figure in the communities of the AlphaCare service areas.

(Geromoso Decl. ¶ 12, Ex. A).  Mr. Zaky was required to "meet[] sales and sales development goals assigned by management."  (*Id*. Ex. A).

Mr. Zaky was paid an annual base salary of $65,000/year.  *See* Germoso Decl. ¶ 8, Ex. B.  As his employment agreement provides, in addition to his base salary, "as a licensed captive field sales agent, [Mr. Zaky is] eligible for commission based on the methodology determined by AlphaCare…."  (*Id.* Ex. B).  AlphaCare's commission program for 2014 for Medicare Sales Reps provided for payments of $250 per sale made, under certain criteria.  (*Id.* Ex. C).  During the period of time he was employed by AlphaCare, Mr. Zaky earned $6,000 in commissions.  (*Id.* ¶ 18).  The amounts of commissions earned by other Medicare Sales Reps during the same period Mr. Zaky was employed varied greatly.  (*Id.*).  Mr. Zaky's sales numbers were tracked and he was placed on a performance improvement plan for poor sales numbers.  (*Id.* ¶ 20).

Since Medicare Sales Reps were entitled to receive commissions, AlphaCare offered the opportunity for weekend work at events, which were also remote from the AlphaCare office.  (Germoso Decl. ¶ 15).  The events were normally street fairs.  (*Id.*).  Because street fairs generally took place in the spring, summer and early fall, the weekend events were seasonal (generally, two to three a month during the fair weather months).  (*Id.*).  The weekend events lasted 3-4 hours and usually 2 to 4 Medicare Sales Reps attended.  (*Id.* ¶ 16).  The seasonal events were voluntary – no Medicare Sales Rep was required to work on the weekend.  (*Id.* ¶ 15; *see* Complaint ¶ 49).  Some representatives requested the work, and Mr. Germoso often gave them time off during the week to make up for the weekend work.  (Germoso Decl. ¶ 15).

During the time Mr. Zaky was employed with AlphaCare, he attended 3 or 4 weekend events out of 6 possible events.  (Germoso Decl. ¶ 17).

Mr. Zaky's Motion includes in the purported class "MLTC" representatives, which appears to be a reference to AlphaCare's Managed Long Term Care sales representatives.

(Germoso Decl. ¶¶ 3, 14). There were approximately 5 Managed Long Term Care representatives that worked during the time Mr. Zaky was employed. (*Id*. ¶ 14). These individuals sold a different product, and did not work on the RVs with Mr. Zaky. (*Id*.).

## ARGUMENT

## I.  LEGAL STANDARD FOR CONDITIONAL CERTIFICATION UNDER THE FLSA

Under Section 216(b) of the FLSA, a plaintiff can bring an action against his employer "in behalf of himself… and other employees similarly situated." 29 U.S.C. § 216(b). In contrast to class actions under Fed. R. Civ. P. 23, plaintiffs in an FLSA collective action "must affirmatively 'opt in' to be part of the class and to be bound by any judgment." *Ahmed v. T.J. Maxx Corp*., 103 F. Supp. 3d 343, 346 (E.D.N.Y. 2015) (*quoting Myers v. Hertz Corp*., 624 F.3d 537, 542 (2d Cir. 2010)). "[A]lthough they are not required to do so by [the] FLSA, district courts 'have discretion in appropriate cases to implement [§ 216(b)]… by facilitating notice to potential plaintiffs of the pendency of the action and their opportunity to opt-in as represented plaintiffs.'" *Id*. (*quoting Myers*, 624 F.3d at 554.) This inquiry is conducted in a two part process. *See Jenkins v. The TJX Companies Inc*., 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012).

Plaintiff here moves under the first step, known as conditional certification, where "the court makes an initial determination to send notice to potential plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Ahmed*, 103 F. Supp. 3d at 346 (*quoting Myers*, 624 F.3d at 555). In order to obtain conditional certification, Plaintiff must show that "[he] and potential opt-in plaintiffs 'together were victims of a common policy of plan that violated the law.'" *Id*. Put another way, "[t]he court must determine whether there is a 'factual nexus between the [plaintiff's] situation and the situation of other current and former [employees].'" *Eng-Hatcher v. Sprint Nextel Corp*., No. 07

Civ 7350 (BSJ), 2009 WL 7311383, at *2 (S.D.N.Y. Nov. 13, 2009) (*quoting Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

## II. THE ISSUE OF PLAINTIFF'S "EXEMPT" STATUS SHOULD BE LITIGATED FIRST

This is a "misclassification" case, where the threshold issue is whether Mr. Zaky and other employees in the putative class were properly classified as "exempt" and thus not entitled to overtime under the FLSA. If, as Defendants maintain, Plaintiff was properly classified as "exempt"– Plaintiff has no FLSA claim, and cannot represent the putative class (assuming it exists). It is thus logical and appropriate for this threshold issue to be litigated first. Accordingly, if the Court determines that the question of Mr. Zaky's exemption status be litigated first, then Defendants agree to toll the statute of limitations while that inquiry proceeds.

"[A] class representative must have a cause of action in his own right in order to bring a class action." *Vansike v. Peters*, 974 F.2d 806, 813 (7th Cir. 1992) (holding that because appellant "has failed to state a [FLSA] claim, we also conclude that he is not entitled to pursue a class action"). "In order to be an appropriate class representative, plaintiff must of course have valid claims to pursue on her own behalf." *Fischer v. Tynan*, No. 90 Civ. 7587 (LBS), 1993 U.S. Dist. LEXIS 8224, at *14 (S.D.N.Y. June 16, 1993) (dismissing motion for class certification because plaintiff's individual securities fraud claims did not survive motion to dismiss); *see also Vogel v. American Kiosk Mgmt.*, 371 F. Supp. 2d 122, 129 (S.D.N.Y. 2005) (because settlement of individual FLSA claim, "collective action under FLSA is moot").

While this Court need not decide this issue now, AlphaCare is confident that discovery will show that its Medicare Sales Reps were "exempt" under the "outside sales exemption". (Answer, at Third Affirmative Defense) Thus, a brief period (90 days) of targeted discovery will allow the Court to decide this critical issue.

In order for a sales employee to be "exempt" under the outside sales exemption, the following two elements are required:

(1)     The employees primary duty was "making sales" **or** "obtaining orders or contracts for services"; **and**

(2)     The employee was engaged in "outside sales" activities, that is, the employee was "customarily and regularly engaged away from the employer's place of business in performing such primary duty."

*See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.500 (emphasis added).

Both are present here.

(i)     **Mr. Zaky "Made Sales"**

The undisputed facts will show that Mr. Zaky "made sales."  To begin, Plaintiff's job description is clear that this is a sales job.  Plaintiff was required to have one-to-one sales meetings and "house calls," as well as interact with the community, all to promote AlphaCare's Medicare products.  (Germoso Decl. Ex. A).  In addition, he earned a commission beginning at $250 per sale made.  (*Id.* Ex. C).

Contrary to Mr. Zaky's Declaration, the fact that there was "no customer payment" at "time of enrollment" does not mean that nothing was sold.  It is sufficient that Mr. Zaky's primary duty was "obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer." *See* 29 C.F.R. § 541.500.  Indeed, numerous courts have found other insurance salespersons to be "exempt" under the FLSA.  *See Chenensky v. New York Life Ins. Co.*, No. 07 CIV. 11504 (WHP), 2009 WL 4975237, at *6 (S.D.N.Y. Dec. 22, 2009) (Plaintiff was properly classified as an exempt outside salesperson where his primary duty was to sell insurance and in order to do so, he "obtained a commitment to purchase [insurance]..." The other activities he engaged in as part of his job were "merely

8

incidental to consummating the deal."); *Gregory v. First Title of America, Inc.,* 555 F.3d 1300, 1309 (11th Cir. 2009) (employee who obtained commitments to buy her employer's title insurance service and was credited with those sales, and all of whose efforts were directed towards the consummation of her own sales and not towards stimulating sales for the employer in general, was an outside sales employee within the meaning of the FLSA and the regulations).

Here, despite Mr. Zaky's unsupported statement that he never "sold" anything, his job was to enroll Medicare beneficiaries in AlphaCare's plans, including "conduct[ing] one on one sales meetings and house calls" (Germoso Decl. Ex. A). Mr. Zaky's sales numbers were tracked, he was eligible for commission and he was placed on a performance improvement plan for poor sales numbers. (*Id.* ¶¶ 28, 20).

(ii) <strong>Mr. Zaky Worked Remotely</strong>

The second element of the exemption is that the employee "customarily and regularly engaged away from the employer's place of business in performing such primary duty." In order to qualify as a place of business a site must be "fixed" and used "by a salesperson as a headquarters". *See* 29 C.F.R. § 541.502.

It is undisputed that Mr. Zaky never worked at AlphaCare's office in Brooklyn – he worked out of an RV. (Germoso Decl. ¶¶ 4, 8; Zaky Decl. ¶ 6). Even assuming the RV was "fixed", as Mr. Zaky's manager Mr. Germoso explains, Mr. Zaky worked **away** from the RV, making house visits and interacting with the community in the course of his sales responsibilities. (Germoso Decl. ¶ 11). "Customarily or regularly" is not difficult to show, as the DOL has held that just 1-2 hours per day, 1-2 times a week is sufficient. *Tracy v. NVR, Inc.,* 293 F.R.D. 395, 398 (W.D.N.Y. 2013), *aff'd sub nom., Gavin v. NVR, Inc.,* 604 F. App'x 87 (2d Cir. 2015) (citing to Department of Labor opinion letter that found sales associates who are frequently absent from the model home, at least one to two hours per day, twice a week, for the

9

performance of indispensable components of sales efforts, meet the definition of 'customarily and regularly' and qualify as exempt outside salespersons under the FLSA).

Defendants submit discovery should proceed as to Mr. Zaky alone and a determination be made as to his status.  In order to facilitate discovery, Defendants will agree to toll the statute of limitations.

## III.  PLAINTIFF HAS NOT MADE A FACTUAL SHOWING THAT HE IS "SIMILARLY SITUATED" WITH OTHERS IN THE PROPOSED CLASS

The only evidence Plaintiff Zaky submits in support of his claim that he is "similarly situated" to a potential class is his own Declaration, which is replete with errors and illustrates that he does not know anything about those in his alleged "class."

First, Mr. Zaky claims he was employed as a "**Marketing Representative**". (Zaky Decl. ¶ 3).  His actual title was "**Medicare Captive Sales Representative**".  (Germoso Decl. ¶¶ 1, 7, Ex. A).

Mr. Zaky also claims that there were **200-400** individuals doing the same job during the alleged statutory period.  (Zaky Decl. ¶ 13).  There were only **28** Medicare Sales Reps between 2012 and present.  (Germoso Decl. ¶ 6).  These gross inaccuracies alone demonstrate Plaintiff's lack of knowledge and the conclusory nature of Mr. Zaky's Declaration.  For this reason alone his motion should be denied.

While a plaintiff is required to make a "modest factual showing" that he and the class members are similarly situated and victims of a common policy or plan, the plaintiff's burden "cannot be satisfied simply by 'unsupported assertions.'"  *Ahmed*, 103 F.Supp.3d at 326-47 (*quoting Myers*, 624 F.3d at 555).  "Conclusory allegations are not enough" to satisfy this burden. *Vasquez v. Vitamin Shoppe Industries*., No. 10 Civ. 8820 (LTS) (THK), 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (*quoting Morales v. Plantworks*, No. 05 Civ. 2349

(DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006)); *see also Khan v. Airport Management Servs.*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *3 (S.D.N.Y. Nov. 16, 2011) (factual showing "cannot be satisfied simply by 'unsupported assertions') (internal citations omitted).

    (a)    **The Mere Classification of Medicare Sales Reps as Exempt Does Not Show Mr. Zaky and Potential Class Members are Similarly Situated**

The mere classification of a group of employees as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.

"[A]s numerous courts in this Circuit have held, 'the mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.'" *Jenkins*, 853 F. Supp. 2d at 322-23; *see also Ahmed*, 103 F. Supp. 3d at 351 ("Ahmed's reference in his renewed motion that he and the potential opt-in [P]laintiffs are similarly situated because [the] [D]efendants uniformly classify all ASMs, with the exception of the stores in California, as exempt from the FLSA's overtime provisions … is insufficient in itself to warrant conditional certification."); *Khan*, 2011 5597371, at *4 ("To proceed as a collective action when making such a claim, 'it is not sufficient for [plaintiff] to show that he and the proposed class operated under the same job description.'").

In *Vasquez*, the court refused to certify a class of Store Managers at Vitamin Shoppes, where plaintiff claimed that he and fellow managers were misclassified as "exempt". Like Mr. Zaky, Vazquez claimed that he "routinely worked in excess of 40 hours a week." *Vasquez*, 2011 WL 2693712, at *1. Vasquez claimed that his duties did not include managerial responsibility and he spent 80% of his time doing non-managerial tasks such as "stocking

shelves and assisting customers in locating products." *Id*. In refusing to conditionally certify the class, the court held:

> Plaintiff has not met his burden. His submission, which is based entirely on his personal experience, is devoid of any evidence from which this Court could infer that all SMs [Store Managers], across 40 states, are misclassified. Plaintiff asserts that Defendants adopted and adhered to a policy effectively requiring their employees to work in excess of 40 hours per week ... in violation of FLSA § 217" (Pl. Mot. at 4), but his only evidence of misclassification of SMs as exempt consists of allegations regarding the tasks performed by specific individuals, based on his observations of and conversations with six SMs, all of whom all of whom work at store locations in Brooklyn or Manhattan. (Vazquez Reply Decl. ¶ 23). He avers "on information and belief" that there are 400 similarly situated employees throughout the United States (Vasquez Decl. ¶ 37), but that assertion—buttressed only by a geographically concentrated cluster of SMs whom he claims were assigned duties inconsistent with their exempt classification—is too thin a reed on which to rest a nationwide certification. *See Bernard v. Household Int'l, Inc.,* 231 F.Supp.2d 433, 436 (E.D.Va.2002) (prefatory phrases like "It is [my] understanding" and "I believe that" are insufficient grounds to certify a collective action).

*Id*. at *3. Here, Mr. Zaky uses the same type of phrases the *Vasquez* court found objectionable. ("**I believe** there were 200 to 400 Marketing Individuals employed by Defendants.") (Zaky Aff. ¶ 13) (emphasis added.)

The one case cited by Plaintiff for the proposition that his conclusory declaration is sufficient is *Patton v. Thomson*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005), a case decided before *Jenkins* (2012), *Vasquez* (2011) and *Khan* (2011). *Patton* is distinguishable. In that case, plaintiff, a Client Service Manager at Thomson, submitted a job description that "lists the duties of a CSM employee, lists the percentage of time each CSM should devote to each duty and states that the position involves over-time hours." *Patton*, 364 F. Supp. 2d at 267. Here, Mr. Zaky did not provide such information, and the job description here (Germoso Decl. Ex. A) does not state that the position involves over-time hours and in fact, describes job duties that are exempt under

the outside sales exemption.  This does not meet the required factual showing.  *See Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575 (LAP) (GWG), 2012 WL 2588771, at *2 (S.D.N.Y. July 2, 2013) (denying motion for class certification where plaintiff made only unsupported allegations that failed to "plausibly lead to the inference that [Assistant Store Managers] nationwide are performing non-exempt tasks").

    (b)    **Mr. Zaky's Other Allegations Are Based Only On His Experience And Improperly Include Employees Performing Different Tasks**

        First, Mr. Zaky's Declaration does not make the required factual showing that all of the purported class members primarily performed non-exempt tasks.  Mr. Zaky only worked on one sub-team of about 5 Medicare Sales Reps while he was employed at AlphaCare. (Germoso Decl. ¶¶ 8, 13).  All in all there were four sub-teams of representatives, each dispatched to different locations around New York City.  (*Id*. ¶ 13).  Mr. Zaky does not have "personal knowledge" of how the other teams worked.  *See Vasquez*, 2011 WL 2693712, at *2 (rejecting plaintiff's motion for conditional certification as "based entirely on his personal experience" as "devoid of any evidence from which this Court could infer that all SMs….are misclassified"); *Jenkins*, 853 F. Supp.2d at 324 (denying motion where "the Plaintiff here has failed to provide any factual support for the contention that other [Assistant Managers] at HomeGoods stores in New York, let alone nationwide, primarily performed non-exempt tasks.").

        Mr. Zaky claims none of the representatives "sold anything" because "the health plans did not require any type of payment at the time of enrollment."  (Zaky Decl. ¶ 8; Complaint ¶ 65).  Mr. Zaky claims that once an eligible participant signed the necessary paperwork, he "turned the paperwork in to my manager."  (Zaky Decl.¶ 7; Complaint ¶ 64). Even accepting Mr. Zaky's version of events, it is sufficient for the outside sales exemption that his primary duty was "obtaining orders or contracts for services or for the use of facilities for

which a consideration will be paid by the client or customer." *See* 29 C.F.R. § 541.500; *Chenensky*, 2009 WL 4975237, at *6 (where plaintiff "obtained a commitment to purchase [insurance]..." he was engaged in sales).  Mr. Zaky also only states that **_he_** turned the paperwork in to his manager, not what any other employees did.  (Zaky Decl. ¶ 7).  Accordingly, Mr. Zaky's allegations, based on his limited personal experience during the short time he worked at AlphaCare, do not show that he was similarly situated to the other Medicare Sales Reps.[3]

Importantly, Mr. Zaky, who sold AlphaCare's Medicare products, includes in his purported class individuals that did an entirely different job – selling Managed Long Term Care products – and who did not even work on the RV during the relevant time.  (Plaintiff's Motion at 2; Germoso Decl. ¶¶ 3, 14).  It is unclear how Mr. Zaky could have any knowledge of what these employees' tasks were as they were selling an entirely different product and did not work with Mr. Zaky.  (*Id.*).

## IV.  IF THE COURT DOES GRANT CONDITIONAL CERTIFICATION, THE DISCOVERY AND NOTICE PROPOSED BY PLAINTIFF IS IMPROPER

### (a)  Plaintiff Is Not Entitled to Discovery of Social Security Numbers

While Plaintiff claims that he needs the Social Security numbers of purported class members to perform a "skip trace" for notices returned as undeliverable because of a change of address, there are only 28 potential class members.  This is not a situation where there are hundreds of class members.  More recent authority than the *Patton* case (2005) has denied similar requests.  *See Han v. Sterling Nat. Mortgage Co.*, No. 09-CV-5589 JFB AKT, 2011 WL 4344235, at *12 (E.D.N.Y. Sept. 14, 2011) ("The Court concludes that plaintiff's request for

---

[3] Mr. Zaky's sales were tracked.  His job responsibilities were to produce enrollments in the health plans.  He received a written performance notice concerning the number of sales he "produced" during the preceding month, which was 9 enrollments and 5 voided applications.  (Germoso Decl. Ex. D).  As his supervisor Mr. Germoso states, Mr. Zaky was among the lowest producing Medicare Sales Reps.  (*Id.* ¶ 20).  Mr. Zaky's numbers suggest he spent less time on sales activities than the others.

Social Security and phone numbers is premature for the same reasons the Court found this same request premature with respect to plaintiffs' motion for class certification under the FLSA [...] Specifically, there is no evidence at this time that plaintiff will have trouble reaching the Proposed Class by sending the class notice to their address via first class mail."); *Rosario v. Valentine Ave. Disc. Store, Co.,* 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture. If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees."). At this stage, Plaintiff has not made a showing that Social Security numbers are necessary.

     (b)    **The Notice is Improper**

In the event the Court grants conditional certification, then several modifications need to be made to the notice proposed by Plaintiff. Proposed revisions are attached as Exhibit B to the Declaration of Alison MacGregor.

First, the date of the class period is incorrect (and misspelled). Plaintiff seeks a class period from "Seeptember 1, 2012", however, Plaintiff filed this action on September 22, 2015. (Dkt. Entry No. 2). *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74 (E.D.N.Y. 2016) (applying the three-year statute of limitations from the date of the filing of the Complaint).

Second, the notice improperly discusses the fee arrangement of counsel for Plaintiff. *Robertson v. LTS Mgmt. Servs. LLC*, 642 F. Supp. 2d 922, 927 (W.D. Mo. 2008) (finding notice to class was improper where it attempted to solicit participating with assurance that opt-in plaintiffs need not worry about fees because with regard to the issue of fees, because "this is an issue which plaintiffs will have an opportunity to discuss with counsel before opting into the class.")

Third, the notice repeatedly uses the incorrect title, "Marketing Representatives." Plaintiff was a "Medicare Captive Sales Representative."  (Germoso Decl. ¶¶ 1, 7).

Fourth, the notice does not disclose to the potential class members that they may be deposed and have other obligations such as production of documents.  *Salomon v. Adderley Indus., Inc.,* 847 F. Supp. 2d 561, 567 (S.D.N.Y. 2012) (directing plaintiffs to add a provision to proposed notice explaining the possibility that opt-in plaintiffs may be required to provide information, appear for a deposition, and/or testify); *Johnson v. Carlo Lizza & Sons Paving, Inc*., No. 15 CIV. 7423 (PAE), 2016 WL 524640, at *5 (S.D.N.Y. Feb. 5, 2016) (directing plaintiffs to add provision to the notice advising potential plaintiffs that they may be required to provide information, appear for a deposition, or testify if they opt in).

Fifth, the notice should list counsel for Defendants.

Sixth, the notice improperly refers to Defendant Magellan.  Defendant Magellan never employed Mr. Zaky.  *See* Magellan Answer at ¶¶ 32, 33.

Finally, while the notice properly suggests that there should be a cut off period after which potential class members cannot submit consent forms, Plaintiff has not proposed a time period or date.  Defendants submit that this should 30 days.  *See Gorey v. Manheim Servs. Corp.,* No. 7:10-CV-1132, 2010 WL 5866258, at *6 (S.D.N.Y. Nov. 10, 2010) ("The deadline for potential plaintiffs to opt in to this collective action will be 30 days after the Court approves Plaintiff's notice and consent forms, and the language in Plaintiff's proposed forms should accord to this deadline.")

## <u>CONCLUSION</u>

Defendants respectfully request that this Court deny Plaintiff's motion for conditional certification, and order that discovery proceed on the issue of Plaintiff's exemption status for a period of 90 days, while the statute of limitations is tolled.  Alternatively, if the Court grants conditional certification, Defendants respectfully request that the Court deny Plaintiff's request for discovery of the social security numbers of potential class members and adopt the form of notice attached to Exhibit B of the Declaration of Alison L. MacGregor.


Dated: New York, NY                       KELLEY DRYE & WARREN LLP
        August 5, 2016

                                          By   /s/ Barbara E. Hoey
                                             Barbara E. Hoey
                                             Alison L. MacGregor
                                             101 Park Avenue
                                             New York, NY 10178
                                             T: (212) 808-7800
                                             F: (212) 808-7897
                                             bhoey@kelleydrye.com
                                             jfrankel@kelleydrye.com

                                             *Counsel for Defendants*